UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

KATIUSKA CAROLINA PIRELA-
ALTAMAR,

     Petitioner,

v.

KEVIN RAYCRAFT et al.,

     Respondents.

_____/

Case No. 1:26-cv-388

Honorable Jane M. Beckering

## **OPINION**

Petitioner, a United States Immigration and Customs Enforcement (ICE) detainee currently detained at the North Lake Processing Center located in Baldwin, Lake County, Michigan, initiated this action by filing a counseled petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241. (Pet., ECF No. 1.) For the following reasons, the Court will deny Petitioner's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241.

### **Discussion**

#### I.  **Procedural History**

In Petitioner's § 2241 petition, Petitioner challenges the lawfulness of her current detention based on her Temporary Protected Status (TPS)[1] and asks the Court to, *inter alia*, accept

---

[1] Under 8 U.S.C. § 1254a, the Secretary for the Department of Homeland Security

  may designate a foreign state for TPS when nationals of that state cannot return there safely due to armed conflict, natural disaster, or other "extraordinary and temporary conditions," unless the Secretary "finds that permitting the [noncitizens] to remain temporarily in the United States is contrary to the national interest of the United States."

jurisdiction over this action and issue a writ of habeas corpus pursuant to 28 U.S.C. § 2241 ordering

Respondents to release Petitioner. (Pet., ECF No. 1, PageID.12–13.)

In an order entered on February 10, 2026, the Court directed Respondents to show cause,

within three business days, why the writ of habeas corpus and other relief requested by Petitioner

should not be granted. (Order, ECF No. 3.) Respondents filed their response on February 13, 2026.

(ECF No. 4.) On February 16, 2026, Petitioner filed an emergency motion for temporary

restraining order and preliminary injunction, requesting that the Court stay Petitioner's removal or

transfer. (Mot., ECF No. 5, PageID.80.). Petitioner then filed her reply on February 17, 2026. (ECF

No. 6.) In an order entered on February 19, 2026, the Court stayed any removal of Petitioner from

the district pending the resolution of this case. (ECF No. 8.)

## II.    Factual Background

Petitioner is a native and citizen of Venezuela. (Form I-213, ECF No. 4-1, PageID.67, 69.)

Petitioner entered the United States at an unknown time and location without inspection. (*Id*.,

PageID.69.) On May 10, 2023, Department of Homeland Security (DHS) agents encountered and

arrested Petitioner at or near Brownsville, Texas. (*Id*., PageID.67, 68.) Petitioner was then paroled

into the United States until July 10, 2023, under 8 U.S.C. § 1182(d)(5). (*Id*., PageID.69; Parole

Notice, ECF No. 4-2, PageID.71.) Thereafter, Petitioner applied for, and was granted, Temporary

Protected Status (TPS) from April 16, 2024, to April 2, 2025. (TPS Approval Notice, ECF No. 1-1,

---

*Nat'l TPS All. v. Noem*, 150 F.4th 1000, 1010 (9th Cir. 2025) (quoting 8 U.S.C. § 1254a(b)(1)(C)).
"Such a designation permits certain nationals of the foreign state, who have continuously resided
in the United States since the effective date of the designation, to register for employment
authorization and protection from deportation for the duration of the TPS period." *Id.* (quoting 8
U.S.C. § 1254a(a)(1), (b)(2)). Additionally, there are other restrictions, including, for example,
that applicants for TPS "must not have been 'convicted of any felony or 2 or more misdemeanors
committed in the United States.'" *Id.* (quoting 8 U.S.C. § 1254a(c)(2)(B)(i)). Further, "TPS does
not provide beneficiaries with a pathway to permanent resident status, nor does it include any right
to petition for visas on behalf of family members in the United States or abroad." *Id.*

PageID.15.) On April 1, 2025, Petitioner applied for an extension of TPS.[2] (Receipt Notice, ECF No. 1-1, PageID.17.)

On or about January 7, 2026, ICE agents arrested Petitioner when she attended a scheduled ICE check-in. (Pet., ECF No. 1, PageID.4.) On January 7, 2026, DHS issued Petitioner a notice and order of expedited removal, stating that DHS had determined that Petitioner was inadmissible under § 212(a)(7)(A)(i)(I) of the Immigration and Nationality Act (INA). (Notice and Order of Expedited Removal, ECF No. 4-3, PageID.74.) On February 11, 2026, the Detroit Immigration Court held a hearing regarding Petitioner's fear of persecution or torture. (Order Immigration Judge, ECF No. 4-4, PageID.77.) It determined that Petitioner fell under the presumption of asylum ineligibility under 8 C.F.R. § 1208.33(a)(1)-(2), and that she had not rebutted that presumption. (*Id*.) It further held that Petitioner had not established a reasonable probability of persecution or torture. (*Id*., PageID.78.) Therefore, it affirmed DHS's negative-credible-fear determination and returned the case to DHS for removal of Petitioner. (*Id*., PageID.77–78.)

## III.    Habeas Corpus Legal Standard

The Constitution guarantees that the writ of habeas corpus is "available to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S.

---

[2] With respect to TPS for Venezuela, "[o]n January 17, 2025, Secretary Mayorkas extended the 2023 [TPS] Designation by eighteen months, through October 2, 2026." *Nat'l TPS All. v. Noem*, 166 F.4th 739, 751 (9th Cir. 2026) (footnote and citation omitted). "The extension was set to become effective on April 3, 2025," the day after the 2023 TPS Designation was due to expire. *Id.* (citation omitted). "On January 24, 2025, DHS began drafting the decision to vacate the TPS extension" for Venezuela. *Id.* Thereafter, on January 26, 2025, "DHS began drafting a termination of Venezuela's TPS." *Id.* On January 28, 2025, Secretary Noem signed off on the decision to vacate the January 17, 2025, extension of TPS for Venezuela, meaning that the 2023 TPS Designation for Venezuela effectively expired on April 2, 2025. (*Id.*) Subsequently, on February 1, 2025, "Secretary Noem signed off on the termination [of TPS]" for Venezuela. *Id.* (citation omitted). Secretary Noem did not terminate the 2021 TPS Designation for Venezuela, however, the 2021 TPS Designation "had only been extended to September 10, 2025." *Id.* (citation omitted).

Const., Art I, § 9, cl. 2). Section 2241 of Title 28 confers the federal courts with the power to issue writs of habeas corpus to persons "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241. This includes challenges by non-citizens in immigration-related matters. *See Zadvydas v. Davis*, 533 U.S. 678, 687 (2001); *see also A. A. R. P. v. Trump*, 145 S. Ct. 1364, 1367 (2025).

## IV.    Discussion

In the present § 2241 petition, Petitioner contends that Respondents have unlawfully detained Petitioner despite Petitioner's TPS. (*See* Pet., ECF No. 1, PageID.9–11.) In her reply, Petitioner explains that she is not asking this Court to review the vacatur or termination of TPS for Venezuela. (Reply, ECF No. 6, PageID.95.) Instead, Petitioner's sole request to the Court is that it enforce the declaratory relief that the United States District Court for the Northern District of California granted in an order entered on December 10, 2025. *See Nat'l TPS All. v. Noem*, No. 25-cv-1766, 2025 WL 3539156, at *2 (N.D. Cal. Dec. 10, 2025). Based on that order, Petitioner seeks immediate release. Respondents argue that Petitioner's § 2241 petition should be denied because she does not currently hold TPS and because she is not entitled to any relief based on the identified order. (*See* Resp., ECF No. 8, PageID.58–59, 60–64.)[3]

Here, Petitioner states that she was granted TPS pursuant to the 2023 TPS Designation for Venezuela. (Pet., ECF No. 1, PageID.5.) As set forth above, Secretary Noem vacated the extension of the 2023 TPS Designation for Venezuela and then signed off on the termination of TPS for Venezuela. *See supra* note 2. The validity of Secretary Noem's actions regarding TPS for Venezuela is currently being litigated. On September 5, 2025, the United States District Court for

---

[3] Because the Court will deny Petitioner's § 2241 petition for the reasons set forth herein, the Court does not address the other arguments raised in Respondents' response.

the Northern District of California held that Secretary Noem exceeded her statutory authority by revoking TPS protections for Venezuelans and Haitians. *Nat'l TPS All. v. Noem*, 798 F. Supp. 3d 1108, 1116 (N.D. Cal. 2025), *aff'd*, 166 F.4th 739 (9th Cir. 2026) In October 2025, the United States Supreme Court allowed the termination of TPS for Venezuela to take effect pending the Government's appeal and "disposition of a petition for a writ of certiorari, if such writ is timely sought." *Noem v. Nat'l TPS All.*, 146 S. Ct. 23, 24 (2025).

While the Government's appeal to the United States Court of Appeals for the Ninth Circuit was pending, the United States District Court for the Northern District of California entered an order granting declaratory relief to the plaintiffs, and declared that "(1) the vacatur of the January 17, 2025, TPS extension for Venezuela was unlawful as was (2) the termination of Venezuela's 2023 TPS designation on February 5, 2025." *Nat'l TPS All. v. Noem*, No. 25-cv-1766, 2025 WL 3539156, at *2 (N.D. Cal. Dec. 10, 2025). The court explained that the grant of declaratory relief in that order was predicated on that court's September 2025 order, see *Nat'l TPS All.*, 798 F. Supp. 3d 1108, which had been appealed to the United States Court of Appeals for the Ninth Circuit. *Nat'l TPS All. v. Noem*, No. 25-cv-1766, 2025 WL 3539156, at *2 (N.D. Cal. Dec. 10, 2025). It also stated that the declaratory relief did not "materially alter the status of that appeal." *Id*.

On January 28, 2026, in *National TPS Alliance v. Noem*, 166 F.4th 739 (9th Cir. 2026), the United States Court of Appeals for the Ninth Circuit affirmed the United States District Court for the Northern District of California's finding that Secretary Noem exceeded her statutory authority by revoking TPS protections for Venezuelans and Haitians. At this time, based on the procedural history of *National TPS Alliance v. Noem*, this non-binding case does not affect the Court's analysis in this habeas action. *Cf. Nat'l TPS All.*, 146 S. Ct. at 24 (allowing the termination of TPS for Venezuelan nationals to take effect pending the Government's appeal). Under these

5

circumstances, Petitioner has failed to show that she currently has TPS or that she had TPS when she was taken into ICE custody. Therefore, at this time, the Court will deny Petitioner's § 2241 petition, which is premised solely on Petitioner's prior TPS.

## V.      Conclusion

For the reasons discussed above, the Court will enter a judgment denying Petitioner's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241. (ECF No. 1.)


Dated:     March 25, 2026                          /s/ Jane M. Beckering
                                                   Jane M. Beckering
                                                   United States District Judge